UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
IRWIN JACOBOWITZ on behalf of,     )
MJ, and                            )
DJ, and                            )
AJ; and                            )
PEARL H. JACOBOWITZ,               )
                                   )
        Plaintiffs,                )
                                   )
    v.                             )   C.A. No. 15-345 S
                                   )
YMCA of GREATER PROVIDENCE         )
BAYSIDE YMCA BRANCH;               )
JOE MARTINO, Executive Director;   )
JOHN and JANE DOE,                 )
                                   )
        Defendants.                )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Before the Court is Defendants' Partial Motion to Dismiss ("Defendants' Motion"). (ECF No. 4.) Plaintiffs filed an Opposition (ECF No. 10) and Defendants filed a Reply (ECF No. 11.)[1] For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion.

---

[1] Plaintiffs' Surreply (ECF No. 12) will not be considered, as they failed to seek leave of Court pursuant to Local Rule of Civil Procedure 7. See LR Cv 7(b)(3) ("No memorandum other than a memorandum in support of a motion, a memorandum in opposition, and a reply memorandum may be filed without prior leave of the Court."); see also Bassi v. Krochina, Civil No. 12-cv-39-JD, 2012 WL 1570836, at *1 (D.N.H. May 3, 2012) ("A pro se party . . . is required to comply with applicable procedural rules." (citing Eagle Eye

I. Background

This case arises out of Defendants' decision to suspend the Jacobowitz family from using the Bayside Branch of the YMCA after one of their children, A.J., who is autistic, threw a tantrum and kicked a chair in which another child was sitting. (See Compl. ¶¶ 13-21, ECF No. 1-1.) Plaintiffs allege disability discrimination in violation of the Americans with Disability Act ("ADA"), the Rhode Island Constitution, and the Civil Rights of People with Disabilities Act ("CRPDA"). (Id. ¶ 33.) They further claim breach of contract based on Defendants' alleged failure "to fulfill the membership contract and mission statement." (Id. ¶ 34.) Defendants' Motion seeks to dismiss all claims against John and Jane Doe and the YMCA Bayside Branch; all claims brought on behalf of Mr. and Mrs. Jacobowitz's children; and Plaintiffs' CRPDA, constitutional, and breach of contract (but not ADA) claims against the remaining Defendants, Joe Martino and the YMCA of Greater Providence.

II. Claims Made on Behalf of the Jacobowitz Children

"[I]t is well established that a non-lawyer parent . . . cannot pursue a pro se lawsuit in Federal Court on behalf of his or her child." Charette v. Martinez, C.A. No. 09-

---

Corp. v. U.S. Dep't of Commerce, 20 F.3d 503, 506 (1st Cir. 1994)).

576S, 2010 U.S. Dist. LEXIS 116173, at *3 (D.R.I. Oct. 6, 2010) (citing Tindall v. Poultney High Sch. Dist., 414 F.3d 281, 284 (2nd Cir. 2005); Gallo v. United States, 331 F. Supp. 2d 446, 447 (E.D. Va. 2004)); see also Bleicken v. Perkins, 1993 U.S. App. LEXIS 33878, *5-6 (1st Cir. Dec. 29, 1993) ("[T]his circuit 'does not allow non-lawyers to represent litigants other than themselves.'" (quoting Amman v. Stow Sch. Sys., 982 F.2d 644, 648 (1st Cir. 1992)).  Several courts have made exceptions to this rule in cases involving the Individuals with Disabilities Education Act ("IDEA") and Supplemental Security Income ("SSI") Benefits.  See Maroni v. Pemi-Baker Reg'l Sch. Dist., 346 F.3d 247, 250 (1st Cir. 2003) (finding that "parents are 'parties aggrieved' within the meaning of IDEA, 20 U.S.C. § 1415(i)(2)(A), and thus may sue pro se"); id. at 249 n.3 ("Two circuits have created a similar exception in cases contesting the denial of [SSI] benefits to children, and have held that parents may sue pro se as next friends on behalf of their child in such cases." (citing Machadio v. Apfel, 276 F.3d 103, 105 (2d Cir. 2002); Harris v. Apfel, 209 F.3d 413, 417 (5th Cir. 2000)).

All of the cases cited by Plaintiffs either support Defendants' argument[2] or fall into one of these two exceptions.[3] Accordingly, Mr. and Mrs. Jacobowitz's claims on behalf of their children are dismissed.

III. Claims Against Jane and John Doe

The Complaint lists Jane and John Doe as Defendants; however, as Defendants note, there are no allegations in the Complaint concerning either individual. (See Defs.' Mot. 5-7, ECF No. 4-1.)  Plaintiffs argue that:

---

[2] Tindall v. Poultney High Sch. Dist., 414 F.3d 281, 286 (2d Cir. 2005) ("[W]e conclude that our cases prohibiting non-lawyer parents from representing their children apply to appeals to this Court and are too broad and too clear to permit us to hear Kyle's appeal — irrespective of our judgment as to whether his mother would be capable of doing so — unless and until he is represented by counsel."); Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 201 (2d Cir.2002) ("In this Circuit, a non-attorney parent is precluded from representing his or her child in federal court."); Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir. 1990) (holding that "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child").

[3] Winkelman ex rel. Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 535 (2007) ("Parents enjoy rights under IDEA; and they are, as a result, entitled to prosecute IDEA claims on their own behalf."); Machadio v. Apfel, 276 F.3d 103, 107 (2d Cir. 2002) ("[W]here a district court, after appropriate inquiry into the particular circumstances of the matter at hand, determines that a non-attorney parent who brings an SSI appeal on behalf [of] his or her children has a sufficient interest in the case and meets basic standards of competence, we hold that in such cases a non-attorney parent may bring an action on behalf of his or her child without representation by an attorney." (emphasis added)).

> The Plaintiffs clearly provides [sic] information about John Doe in paragraph 26 of their complaint, under heading "Allegations." Plaintiffs state that on August 30, 2013, Jim Berson, in his capacity as Chief Executive Officer and President failed to respond to Plaintiffs['] requests for corrective measures in the matter at hand.  The YMCA is a member organization.  The YMCA of Greater Providence is a member organization that consist of council members (Collectively "Jane and John Doe").

(Pls.' Opp'n 3, ECF No. 10.)  With respect to Jim Berson, Plaintiffs are clearly aware of his identity.  If they intend to proceed against him as a defendant, they must amend their Complaint to name him.  See Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 8, n.5 (1st Cir. 2007) ("[A] plaintiff may bring suit against a fictitious or unnamed party where a good-faith investigation has failed to reveal the identity of the relevant defendant and there is a reasonable likelihood that discovery will provide that information. . . . Of course, once those identities are revealed, the plaintiff should act promptly to amend the complaint to substitute the correct parties and to dismiss any baseless claims.").  Regarding the "council members," Plaintiffs make no allegations in their Complaint concerning such members.  Accordingly, the claims against Jane and John Doe are dismissed.

IV. Claims Against Bayside Branch

Plaintiffs name as Defendants both "the YMCA of Greater Providence" and "the YMCA of Greater Providence Bayside

Branch." (Compl. ¶¶ 4-5, ECF No. 1-1.) Defendants argue in their motion that the Bayside Branch "is only a branch (i.e., a location) at which the YMCA conducts operations" and "is <u>not</u> a corporation or separate legal entity." (Defs.' Mot. 7, ECF No. 4-1 (emphasis in original).) Under Federal Rule of Civil Procedure 17(b),

> [c]apacity to sue or be sued is determined . . . by the law of the state where the court is located, except that: (A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws.

The Bayside YMCA branch is not an "unincorporated association"; it is merely a division of a larger incorporated association, the YMCA of Greater Providence.[4] See <u>E.E.O.C. v. St. Francis Xavier Parochial Sch.</u>, 77 F. Supp. 2d 71, 77 (D.D.C. 1999) <u>aff'd sub nom.</u> <u>E.E.O.C. v. St. Francis Xavier Sch.</u>, 254 F.3d 315 (D.C. Cir. 2000) ("Although the division is not separately incorporated, it is still governed by the terms of the corporate charter and still enjoys corporate status because it is a unit of the larger corporation. Thus, the Court concludes that the federal law definition of an unincorporated association does not encompass an

---

[4] Plaintiffs argue that, because the YMCA Bayside Branch conducts fundraising efforts, it must be a separate entity; however, they fail to cite any authority for this conclusion. (<u>See</u> Pls.' Opp'n 4-5, ECF No. 10.)

unincorporated division of a corporation."). It is well established that a subdivision of a larger organization is not a proper party to a suit. See, e.g., Smartdoor Holdings, Inc. v. Edmit Indus., Inc., 78 F. Supp. 3d 275, 277-78 (D.D.C. 2015) (finding that division of larger corporation lacked capacity to be sued in federal court); Heaton v. Fillion, No. PC/2002-1510, 2004 WL 1769683, at *2 (R.I. Super. July 30, 2004) ("[A]s the Cranston Police Department is only a department or subdivision of the municipality, this Court finds that the Police Department is not a proper party defendant in this suit, and the motion to dismiss filed on its behalf should be granted.").

The Court finds that the YMCA Bayside Branch is not properly a party to this suit, as it is a division of Defendant YMCA of Greater Providence; accordingly, the claims against the YMCA Bayside Branch (but not the YMCA of Greater Providence) are dismissed.

V.   CRPDA Claims

On April 23, 2015, the Commission for Human Rights issued a notice of right to sue to Plaintiffs. The notice provided that "[i]f you intend to sue, **YOU MUST DO SO WITHIN NINETY (90) DAYS FROM THE DATE OF THIS NOTICE: OTHERWISE YOUR RIGHT TO SUE IS LOST.**" (Notice, ECF No. 1-1 at 12 (emphasis in original).) Plaintiffs filed their Complaint on July 23,

7

2015, which Defendants contend was one day after the 90-day limitations period had run.[5] The parties agree that pursuant to Rule 6(a) of the Rhode Island Rules of Civil Procedure, the day of the notice letter is not included in the limitations period, and therefore, the first day of the 90-day period was July 24, 2015. However, "[t]he last day of the period is to be included, unless it is a Saturday, Sunday, or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday, nor a holiday." McAninch v. State of R.I. Dep't of Labor & Training, 64 A.3d 84, 88 (R.I. 2013). Defendants are thus correct that the ninetieth day was Wednesday, July 22, 2015 – the day before Plaintiffs filed their Complaint.

The First Circuit strictly enforces these types of time limitations. See Rice v. New England Coll., 676 F.2d 9, 11 (1st Cir. 1982) ("In the absence of a recognized equitable consideration, the court cannot extend the [Title VII 90-day] limitations period by even one day."). It appears Plaintiffs simply calculated the time period incorrectly. However, "pro

---

[5] Mr. Jacobowitz filed a Notice of Reconsideration with respect to the Commission's partial finding of no probable cause. The Commission continued its investigation with respect to this one portion of the Charge and ultimately issued a finding of probable cause, and then a Notice of Right to Sue on August 11, 2015. Plaintiffs have not filed a Complaint based on this letter.

se status does not provide an independent basis for the Court to toll the statute of limitations. '[I]t is well established that ignorance of the law, even for a[] . . . pro se [plaintiff], generally does not excuse prompt filing.'" Correia v. Mass. Bay Commuter R.R., Civil Action No. 12-12048-DJC, 2013 U.S. Dist. LEXIS 170899, at *9 (D. Mass. Dec. 4, 2013) (quoting Stonier v. United States, No. 03-10146-JLT, 2011 U.S. Dist. LEXIS 52780, 2011 WL 1877670, at *4 (D. Mass. Apr. 7, 2011). Thus, the Court finds that Plaintiffs' CRPDA claims were not timely filed.

Plaintiffs further argue that "any delays in filing said complaint would be due to the defendants['] misconduct or alleged fraud (false representation of the Bayside YMCA branch or Bayside Family YMCA (and other branches) by citing the YMCA branches as a location, a nonprofit, or nonexistent when the situation suits its purpose." (Pls.' Opp'n 6, ECF No. 10.) Even assuming arguendo that there was some false representation on behalf of the Bayside YMCA branch – which, to be clear, the Court does not find – Plaintiffs fail to explain how this relates to their failure to file on time. The CRPDA claims are thus dismissed.

VI.   Rhode Island Constitutional Claims

To state a claim for a violation of the Rhode Island Constitution, Plaintiffs must allege that the state took some

9

action to cause them harm.  See Tomaiolo v. Mallinoff, 281 F.3d 1, 11-12 (1st Cir. 2002) ("The district court therefore correctly concluded that without state action by the escrow defendants, Tomaiolo's state constitutional claim against them could not succeed.").  Here, the only alleged state action Plaintiffs point to is the fact that a "Notice of Right to Sue" was issued by a state agency. (See Pls.' Opp'n 6-7, ECF No. 10.)  They do not, however, allege (nor could they) that this action was in violation of the Rhode Island Constitution.  Accordingly, the Rhode Island constitutional claims are dismissed.

VII. Breach of Contract Claims

Plaintiffs allege that "defendants breached their duty to fulfill the membership and mission statement contract." (Compl. ¶ 34, ECF No. 1-1.)  Defendants are correct that the "mission statement" is not a contract.  See, e.g., Vurimindi v. Fuqua Sch. of Bus., 435 F. App'x 129, 133-134 (3d Cir. 2011) (holding that the plaintiff could not recover on his breach of contract claim because the portion of the mission statement that he presented provided no specific terms that could be considered binding); Minehan v. United States, 75 Fed. Cl. 249, 260 (Fed. Cl. 2007) ("[P]laintiff's allegations regarding a quasi-contract with the government are insufficient even to survive a motion to dismiss. . . . [T]he

10

IRS's mission statement is aspirational, and it makes no specific promise or offer which could be deemed the basis for a contract." (internal citations omitted)). The membership contract, however, is a different story.

Defendants argue that they cannot, as a matter of law, be liable for breach of the membership contract because it had the following Membership Termination Policy:

> I agree that the YMCA has the right to terminate my YMCA privileges anytime if:
> a) it appears to the YMCA in its sole discretion and judgment that I (and/or my children and/or wards who are under the age of 18 years) are taking actions or doing things that are contrary to the Y's Mission,[6] or;
> b) it appears to the YMCA in its sole discretion and judgment that I (and/or my children and/or wards who are under the age of 18 years) are involved in criminal acts, or that;
> c) I (and/or my children and/or wards who are under the age of 18 years) are acting in ways that disrupts the YMCA's operations.
> d) I (and/or my children and/or wards who are under the age of 18 years) are in direct violation of the Member Code of Conduct.

---

[6] Contrary to Plaintiff's argument, the mere mention of the Y's Mission does not incorporate it into the contract. (Pls.' Opp'n 7, ECF No. 10.) As Defendants point out, the Mission Statement – which states that "[t]he mission of the YMCA of Greater Providence is to build health spirit, mind and body for all, through programs, services and relationships that are based upon our core values of caring, honesty, respect and responsibility" – "does not create specific promises or offers to Defendants' members, but serves an aspirational statement that Defendants use to guide their organization." (Defs.' Reply 5, n.3, ECF No. 11.)

(Ex. D to Defs.' Mot. [Membership Contract] 4, ECF No. 4-5; see Defs.' Mot. 14-15, ECF No. 4-1.)  The Member Code of Conduct states that:

> [t]he YMCA of Greater Providence is committed to providing a safe and welcoming environment for our members and guests.  To ensure the safety and comfort of all, we ask individuals to act appropriately at all times when they are in our facility or participating in YMCA programs.  We expect persons using the YMCA to behave in a mature and responsible way and to respect the rights and dignity of others.  Our Code of Conduct does not permit language or action that can hurt or frighten another person. . . . This includes . . . physical contact with another person in an angry or threatening way[.]

(Defs.' Mot. 15, ECF No. 4-1.)  Defendants thus argue that "the Membership Agreement expressly authorized Defendants to terminate Plaintiffs and their family's membership for the listed reasons.  Defendants did not even actually terminate Plaintiffs' membership. Defendants merely prohibited family use of one of Defendant YMCA's branches.  They had every right to do this."  (Id. (emphasis in original).)  However, this assumes that A.J.'s conduct was, as a matter of law, a breach of the Member Code of Conduct.  Taking the allegations in the Complaint as true and drawing all inferences in Plaintiffs' favor, the Court is not convinced.  The Complaint states that "Plaintiff AJ had difficulty awaiting his turn for the computer and tantrumed kicking the chair in which the patron was sitting and using the computer.  The patron was not harmed

12

and continued using the computer." (Compl. ¶¶ 15-16, ECF No. 1-1.) The facts may well reveal that Defendants are correct that this conduct violated the Member Code of Conduct, but the Court is not ready to make that determination at this stage. Consequently, the breach of contract claim will go forward.

VIII. Conclusion

For the foregoing reasons, Defendants' Motion is hereby GRANTED IN PART and DENIED IN PART. The Court hereby DISMISSES all claims against John and Jane Doe and the YMCA Bayside Branch; all claims brought on behalf of Jacobowitz's children; and Plaintiffs' CRPDA and Rhode Island constitutional claims against the remaining Defendants, Joe Martino and the YMCA of Greater Providence. Plaintiffs' breach of contract and ADA claims will go forward against those Defendants.

IT IS SO ORDERED.

/s/ WEsmith

William E. Smith
Chief Judge
Date:  March 30, 2016